## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WOODBOLT DISTRIBUTION, LLC d/b/a WOODBOLT INTERNATIONAL and CELLUCOR, | ) ) ) | |
| | ) | C.A. No. 11-1266 (GMS) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATURAL ALTERNATIVES INTERNATIONAL, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENT-IN-SUIT

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON AND FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
cottrell@rlf.com
rawnsley@rlf.com
*Attorneys For Plaintiff*
*Woodbolt Distribution, LLC*

OF COUNSEL:
Peter J. Phillips (*pro hac vice*)
Barry Evans (*pro hac vice*)
LUCAS & MERCANTI, LLP
475 Park Avenue South, 15th Floor
New York, NY 10016
212-661-8000
pphillips@lmiplaw.com
bevans@lmiplaw.com

Dated: July 16, 2012

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT.............................................................................................................. 1

    I.   WOODBOLT'S MOTION IS NOT PREMATURE EVEN THOUGH
        THE PTO HAS NOT YET DECIDED TO REEXAMINE
        THE '381 PATENT ........................................................................................... 1

    II.  NAI WILL NOT BE PREJUDICED OR TACTICALLY
        DISADVANTAGED BY A STAY ..................................................................... 2

        A.  Any Delay in Litigation Due To a Stay
            Will Not Unduly Prejudice NAI ............................................................... 2

        B.  NAI Has No Standing in this Action Even to Allege That
            Woodbolt is Causing Irreparable Harm to NAI
            By Infringing the '381 Patent .................................................................. 4

        C.  Woodbolt's Alleged Infringement Is Not Causing
            Irreparable Harm to NAI.......................................................................... 5

        D.  Woodbolt Is Not Seeking an Unfair Tactical Advantage ............................ 6

        E.  A Stay Will Resolve and Simplify the Issues
            Before This Court .................................................................................... 6

    III. IT IS OVERWHELMINGLY LIKELY THAT ALL THE CLAIMS OF THE
        '381 PATENT WILL BE CANCELLED IN THE REEXAMINATION ......... 7

        A.  There is a Fatal Break in the Claim to Priority of the '381 Patent............... 7

        B.  The New Prior Art Presented in the Request for Reexamination
            Will Result in the Cancellation of All the Claims ...................................... 9

    IV. A STAY WILL SIMPLIFY THIS CASE...................................................... 9

    V.  THE STAGE OF THIS LITIGATION FAVORS A STAY............................ 10

    VI. CONCLUSION.............................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akeena Solar Inc. v. Zep Solar Inc.*,
2011 WL 2669453 (N.D. Cal. July 7, 2011)..................................................................2

*ASCII Corp. v. STD Entm't*,
844 F. Supp. 1378 (N.D. Cal. 1994).............................................................................2

*Ho Keung Tse v. Apple Inc.*,
2007 WL 2904279 (N.D. Cal. Oct. 4, 2007)..................................................................2

*Wall Corp. v. BondDesk Group L.L.C.*,
2009 WL 528564 (D. Del. Feb. 24, 2009).....................................................................2

STATUTES & RULES

19 U.S.C. § 1337 (b)(1) .......................................................................................................7

35 U.S.C. § 120.................................................................................................................8, 9

OTHER AUTHORITIES

Manual of Patent Examining Procedures § 2661 (8th ed. Rev. 8, July 2010)...................3

Manual of Patent Examining Procedures § 2662(L) (8th ed. Rev. 8, July 2010)..............3

## INTRODUCTION

In its Opposition (D.I. 29), NAI fails to demonstrate that (1) it will be tactically disadvantaged or prejudiced by a stay, (2) Woodbolt's Reexamination Request ("Request") will not result in cancellation of the claims, and (3) a stay issued at this early stage of the litigation will not result in judicial economies and simplify the proceedings.

NAI's argument that an indefinite delay in the proceedings is prejudicial is not recognized by this Court as grounds for denying a stay, and the statistics NAI offers that reexaminations take a long time to resolve are misstated.  In fact, *inter partes* reexaminations where litigation is pending and stayed conclude more quickly than do other reexaminations.

On the likelihood of the claims being cancelled in the reexamination, NAI does not controvert *any* of the many challenges to the validity of the claims of the '381 Patent based upon new prior art not known to or considered by the Examiner.  NAI thereby concedes that all the claims will be cancelled as unpatentable over that prior art.  And, NAI offers a flawed, unsubstantiated theory, not based upon the Patent Statute, regulations or case law as to why there was not a fatal and incurable "priority break," which provides another independent basis for invalidity of the '381 Patent based upon NAI's own earlier-issued patents.

Lastly, NAI offers no reason why the grant of a stay at this very early stage of the litigation will not lead to significant economies for both the parties and this Court.

## ARGUMENT

### I.   WOODBOLT'S MOTION IS NOT PREMATURE EVEN THOUGH THE PTO HAS NOT YET DECIDED TO REEXAMINE THE '381 PATENT

As stated in Plaintiff's Opening Brief (D.I. 29, p. 6), courts routinely issue stay orders, even before the United States Patent and Trademark Office ("PTO") has granted a request for

reexamination.[1]   That the American Invents Act ("AIA") has changed the standard for PTO review from a "substantial new question of patentability" to "more likely than not that one or more claims are invalid," as argued by NAI, should not change this Court's policy of granting stays when requests for reexamination are filed, because it is reasonable to assume that requests for reexamination will meet the new standard.

In any event, Woodbolt's Request presents massive evidence demonstrating that the '381 Patent is invalid.  In addition to showing that a fatal priority break renders all of the claims anticipated by NAI's own earlier patents, the Request shows that the claims are fully anticipated by no less than six (6) prior art references not known to or considered by the PTO during the examination of the '381 Patent.  NAI has failed to refute that the fatal priority break invalidates all of the claims of the '381 Patent and has offered no counterargument with respect to the invalidating effect of the six (6) prior art references in the Request.

Hence, without rebutting Woodbolt's showing of invalidity, NAI cannot reasonably argue that it is "speculative" whether the PTO will grant Woodbolt's Request.  To the contrary, it is a virtual certainty that reexamination will be ordered.[2]

## II.    NAI WILL NOT BE PREJUDICED OR TACTICALLY DISADVANTAGED BY A STAY

### A.    Any Delay in Litigation Due To A Stay Will Not Unduly Prejudice NAI

As this Court has recognized, a delay of litigation proceedings caused by a stay pending reexamination "does not, by itself, amount to undue prejudice."[3]   Woodbolt respectfully points

---

[1] *Akeena Solar Inc. v. Zep Solar Inc.*, 2011 WL 2669453, at *2 (N.D. Cal. July 7, 2011) ("A court need not wait for the PTO to issue a reexamination order to grant a stay."); *see also Ho Keung Tse v. Apple Inc.*, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007); *ASCII Corp. v. STD Entm't*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay even before a reexamination request was *filed*).

[2] According to NAI's own statistics, reexamination orders issue 95% of the time.

out that *any* delay, no less an indefinite delay, in adjudicating NAI's claims under the '381 Patent, works a hardship upon Woodbolt because the '381 Patent casts a shadow on its operations, and if any claim is held valid it may lead to a damage award. The reexamination is thus a two-edged sword. It does not impact NAI any more adversely than it impacts Woodbolt.

The statistics cited by NAI support Woodbolt's Motion, in that they demonstrate that *inter partes* reexaminations are efficient and cost-effective, especially if the litigation is stayed. While the average *inter partes* reexaminations have an average pendency of about 36 months, in reexaminations involving stayed litigation, response times to PTO actions are one month instead of two, and the PTO handles such cases with higher priority than other reexaminations,[4] resulting in litigation-stayed cases being completed faster than average. Also, 89% of inter partes reexaminations resulted in some or all claims being changed or cancelled, so NAI's present patent claims will probably not survive reexamination, or, they will be narrowed, thereby simplifying the issues.

The fact that only three *inter partes* cases have reached the PTO's Board of Patent Appeals and Interferences and none have gone through each step in the entire reexamination process demonstrates that the Examiners in the PTO are doing a very effective job of reexamination without triggering appeals.

NAI's attempt to add the time for appellate review to the average pendency of reexaminations does not add any weight to its claim of undue prejudice. Moreover, the statistics offered by NAI show that the likelihood of an appeal to the Federal Court from a reexamination is remote.

---

[3] *Wall Corp. v. BondDesk Group L.L.C.*, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009) (citing *Research in Motion, Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008)).
[4] Manual of Patent Examining Procedure (MPEP) § 2662 (L), and § 2661.

While NAI assumes that it or Woodbolt will appeal the reexamination, it is unlikely that NAI will have any grounds for an appeal from the expected adverse determination of the PTO upon reexamination due to the fatal and incurable priority defect and the abundant new prior art submitted by Woodbolt, which anticipates all of the '381 Patent claims.

NAI's contention that its distributor and customers will be hurt by a significant delay in these proceedings, even if true, is irrelevant. Woodbolt's Complaint named NAI's distributor, Compound Solutions, Inc. ("CSI"), but CSI was dismissed so any alleged hardship to CSI as a non-party is not at issue. Likewise, NAI's other customers are not before this Court.

In its arguments and exaggerations about the "interminable" length of *inter partes* reexaminations, NAI fails to recognize the salutary policy considerations favoring reexaminations.[5]

### B.   NAI Has No Standing in this Action Even to Allege That Woodbolt is Causing Irreparable Harm to NAI by Infringing the '381 Patent

Woodbolt filed this action nearly seven months ago. If NAI really believed it was suffering irreparable harm because of Woodbolt's alleged infringement of the '381 Patent, it could have filed an answer and counterclaims for patent infringement, but NAI does not even have a claim of infringement at issue in this case. Instead NAI commenced a patent infringement in Texas and filed a motion for preliminary injunction there. That action was stayed on January 30, 2012. After January 30, NAI *could* have withdrawn its venue transfer motion filed in this Court on January 11, 2012 (D.I. 6), filed an answer and counterclaims, and moved for preliminary injunction in this Court. It did not take any of those actions and hence its claim of irreparable harm is not at issue in this action.

---

[5] *See* Plaintiff's Opening Brief (D.I. 29).

**C.** **Woodbolt's Alleged Infringement Is Not Causing Irreparable Harm to NAI**

Even if a preliminary injunction motion by NAI were pending in this action, NAI cannot demonstrate irreparable harm. NAI has a well-developed program of granting non-exclusive rights under its patents to any company willing to pay the premium price demanded by its distributor, CSI. A license was offered and continues to be offered to Woodbolt under this program. Thus, should NAI somehow establish liability, damages are easily calculable and compensable by money, rendering NAI's claim of irreparable harm meritless.

NAI advances the novel theory that Woodbolt is harming NAI because it has not entered into the standard license agreement which other companies have signed and is thus causing NAI to lose goodwill because it is selling its accused products without displaying NAI's trademark CarnoSyn. This bootstrap argument is without merit. The only alleged tort which is at the heart of this case (raised by Woodbolt, but not NAI) is patent infringement.[6] Even in Texas NAI has no claim related to Woodbolt's refusal to enter into a license agreement containing other extraneous covenants including a license to use NAI's trademarks.

**D.** **Woodbolt Is Not Seeking an Unfair Tactical Advantage**

Woodbolt's *inter partes* Request is not a stalling tactic. Rather it is an initiative which is encouraged by the federal courts to achieve judicial economy by delegating complex patent issues to the PTO, the tribunal which is best qualified to adjudicate them.[7]

---

[6] Even in NAI's second-filed Texas action, its claims were *solely* for patent infringement. The cases cited by NAI for irreparable harm are distinguishable. *Scandia, Denny* and *Pet Silk* were trademark cases where trademark infringement was a central issue. In *i4i Ltd*, an infringement by Microsoft caused i4i's product to become obsolete, with a loss of established market share resulting in a *permanent* injunction after patent validity was upheld and infringement was proven *after trial*. In *Astra Zeneca*, the patent owner was a proprietary drug manufacturer unwilling to grant a license to a generic drug supplier. In *Nanoexa*, *no* irreparable harm was actually found.

[7] See discussion of these efficiencies in Woodbolt's Opening Brief (D.I. 29), pages 9-10.

NAI accuses Woodbolt of trying to delay the proceeding. The opposite is true. Woodbolt intends to accelerate the adjudication of the '381 Patent using the fast-track procedures of the PTO. Woodbolt is confident that the PTO proceedings will quickly result in the cancellation of *all* the claims of the '381 Patent.

NAI also accuses Woodbolt of trying to run out the clock on the '381 Patent. Woodbolt would simply like to remove the cloud cast by this patent, and the Request offers the most practical, effective, economical and fast way of achieving that goal. Even if NAI should successfully defend the validity of the '381 Patent in the PTO and return, post-stay, for damages proceedings in this Court, those damages will be calculated for whatever period of time has elapsed during the reexamination.

It is not Woodbolt's fault that the '381 Patent will expire in 2017. The '381 Patent is among *eight* patents that NAI has sought on essentially the same "invention." The first three patents here, in effect, were determined to be invalid.[8] NAI filed the '381 Patent in August 2011 in an attempt to "fix" the problem (but failed to do so for multiple reasons), which resulted in the effective invalidation of the first three patents.

Woodbolt does not have unclean hands. It is NAI, seeking to enforce an invalid patent procured through inequitable conduct, seeking to avoid the effects of the Markman Order, and seeking to litigate its '381 Patent in Texas rather than in this Court, that has unclean hands.

### E. A Stay Will Resolve and Simplify the Issues Before This Court

NAI agrees that Woodbolt's antitrust and unfair competition claims are premised in part upon NAI's assertion of an invalid patent obtained through its inequitable conduct. Once the

---

[8] After this Court (Chief Judge Sleet presiding) issued its Order Construing The Terms of U.S. Patent Nos. 5,965,596, 6,172,098 and 6,426,631 dated May 31, 2011 in C.A. No. 09-626 ("Markman Order"), the action was dismissed.

PTO finds the patent claims to be invalid, Woodbolt will be able to effectively pursue its antitrust and unfair competition claims. NAI too will benefit from the PTO proceedings. It would not be a prudent use of judicial resources or the parties' resources to litigate NAI's claims of infringement when its patent claims are very likely to be cancelled.[9]

### III.   IT IS LIKELY THAT ALL THE CLAIMS OF THE '381 PATENT WILL BE CANCELLED IN THE REEXAMINATION

#### A.   There is a Fatal Break in the Claim to Priority of the '381 Patent

Woodbolt agrees with NAI that there is a three-prong test which must be satisfied for a later-filed application to claim the benefit of the filing date of an earlier-filed application. NAI's difficulty is that the claim to priority of the '381 Patent which appears on the face of the '381 Patent fails not just *one* but *two* prongs of that test because:

> (1) the Sixth Application in the series is said to be a continuation-in-part of the Fourth Application. But the Fourth Application issued on January 20, 2004 and the

---

[9] NAI's cited cases denying a stay are factually distinguishable. Stays were requested too late in *Gladish* (one year after action commenced after discovery started), *Cognex* (discovery cut-off in three weeks, trial six months away), *Belden* (request for five patents filed 17-20 months after action commenced, and motion filed eleven days before trial), *Fothergill* (non-patent case, trial was only two weeks away) *Drussel* (discovery cut-off two months away), and *ESN* (two months after scheduling conference, after discovery had commenced). Stays were denied where the patent owner sought to strengthen his patent in a reissue in *Sighting* and *Tyco*. Stays were denied where parties were not bound by the reexamination, either because the reexamination was *ex parte* (*Cooper*) or did not join in an *inter partes* reexamination (*Stormedia* and *Texas MP3*). In *Ohio Willow*, a stay was denied where a defendant had filed serial reexamination requests on different patent claims over three year period, one after an earlier reexamination had concluded. In *Biax*, back in 2007, 71% of patent claims were changed or cancelled, whereas present statistics show that 89% of the claims are changed or cancelled. Also in *Biax* many invalidity defenses outside the reexamination remained, requiring court consideration if the reexamination if the patent claims did not result in invalidity. In *Synopsys* this Court denied a stay request by the *patent owner* pending reexamination, because a stay would have deprived the alleged infringer of early resolution of not only the infringement charges, but also counterclaims for anti-trust, Lanham Act, trade libel, unfair competition and tortious interference. Stays are disfavored in ITC proceedings because the statute 19 U.S.C. § 1337 (b)(1) requires proceedings to be completed "at the earliest practicable time" (formerly 12 months).

> Sixth Application was filed on August 29, 2008, *more than four and one-half years later.* Thus the copendency prong of the test is not satisfied; and
>
> (2) the Fifth Application in the series does not make *any* reference to the Fourth Application. The priority claim thus fails the prong of the test which requires *each* later-filed application to contain a *specific reference* to an earlier copending application.[10]

Thus, the claim to priority on the face of the '381 Patent fails *two* prongs of the three prong test. This priority break automatically qualifies the issued First and Second Patents as prior art which invalidates *all* of the claims of the '381 Patent.

NAI presents a novel theory of claiming priority, unfounded in the Patent Statute (35 U.S.C. § 120), the Rules of Practice in Patent and Trademark Cases (37 CFR), the Manual of Patent Examining Procedure (MPEP), or case law.[11] NAI contends that an application can have two (or more than two) claims to priority during its pendency. Its position is completely at odds with the *actual* claim of priority of the '381 Patent. If NAI believed its new theory when it prosecuted the '381 Patent, it would have stated in that claim that Patent I (Fifth Application) is a continuation-in-part of the Fourth Application. But it did not do so. It did not link the Fifth Application to the Fourth Application because it had intentionally severed that link.

---

[10] Patent II in NAI's chart on page 12 of its Opposition corresponds to the Sixth Application in Woodbolt's nomenclature; Patent I in NAI's chart on page 12 of its Opposition corresponds to the Fifth Application; and the next earlier application, copending with the Fifth Application (but not the Sixth Application) is the Fourth Application.

[11] The Opposition purports to explain how Patent II (Sixth Application) is entitled to the benefit of Patent I (Fifth Application) because it was filed on August 29, 2008 claiming to be a continuation of Patent I and on that date, August 29, 2008, Patent I included a claim filed years earlier to the priority of the next earlier application in the series. But only several days later, on September 2, 2008, demonstrating that its actions were intentional, NAI amended Patent I (Fifth Application) by cancelling its claim to the priority of the Fourth Application. NAI says that this amendment affected only Patent I and that Patent II was still entitled to the priority of the next earlier application because NAI had secured that claim on August 29, 2008.

NAI criticizes Woodbolt for stating that the amendment to the priority claim has a *nunc pro tunc* effect. But that *nunc pro tunc* effect is grounded in § 120 of the Statute. NAI argues that if amendments to the priority claim have a *nunc pro tunc* effect, the Examiner's job is more difficult because he has to examine priority claims in all related applications and that he cannot issue sound patents because later an applicant might amend the priority claim of a still-pending intermediate application. In fact, the Examiner need only rely on the applicant's statements of priority in the application being examined. It is within the *applicant*'s control whether the priority of an intermediate application is changed.

### B.   The New Prior Art Presented in the Request for Reexamination Will Result in the Cancellation of All the Claims

Woodbolt presented no less than *six* prior art publications in its Request, each of which is a complete anticipation of claim 1 of the '381 Patent rendering it invalid. None of these references was discussed or applied by the Examiner during the prosecution of the '381 Patent. Woodbolt presented still other publications that anticipate or render all of the dependent claims obvious and therefore invalid. NAI has not opposed *any* of these invalidating submissions. Its silence is a concession that *all* of the claims of the '381 Patent are invalid over the prior art. It is a virtual certainty that all of the claims will be cancelled in the reexamination.

## IV   A STAY WILL SIMPLIFY THIS CASE

The basic advantages of a reexamination – the submission of the issue of patent validity to patent examiners at the PTO – will substantially simplify all additional matters. Moreover, it will establish the premises for Woodbolt's antitrust claims.

Again, NAI argues that a stay will delay the ultimate resolution of the matters before this Court. That is not true, and even if it were true, the policy advantages of a reexamination by the experts at the PTO far outweigh some delay of the final disposition.

## V.      THE STAGE OF THIS LITIGATION FAVORS A STAY

This litigation is in its very earliest stages.  NAI has not answered Woodbolt's Complaint

or filed counterclaims.  A Rule 16 Conference has not taken place, and scheduling order has not

issued.  NAI could have filed a motion for a preliminary injunction in this Court months ago, but

preferred to go forum shopping in Texas.[12]   It should not now be heard to complain about

circumstances brought on by its own lack of diligence and gamesmanship.

## VI.      CONCLUSION

For the foregoing reasons, Woodbolt respectfully requests that the Court grant its motion

to stay this action pending reexamination of the '381 Patent.

OF COUNSEL:                                          _/s/ Jason J. Rawnsley_____
                                                     Frederick L. Cottrell, III (#2555)
Peter J. Phillips (*pro hac vice*)                   Jason J. Rawnsley (#5379)
Barry Evans (*pro hac vice*)                         Richards, Layton & Finger, P.A.
Lucas & Mercanti, LLP                                One Rodney Square
475 Park Avenue South, 15th Floor                    920 North King Street
New York, NY 10016                                   Wilmington, DE 19801
(212) 661-8000                                       (302) 651-7700
pphillips@lmiplaw.com                                cottrell@rlf.com
bevans@lmiplaw.com                                   rawnsley@rlf.com

Dated: July 16, 2012                                 *Attorneys for Plaintiff Woodbolt*
                                                     *Distribution, LLC*

---

[12] The AIA provisions referred to in NAI's Opposition (D.I. 30) footnote 17, do not take effect until September 16, 2012, and Congress has decided to keep the present *inter partes* reexamination scheme in place even after that date.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2012, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to counsel of record, and served true and correct copies on the following counsel as indicated:

**BY ELECTRONIC MAIL**

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Natural Alternatives*
*International, Inc.*

**BY ELECTRONIC MAIL**

Scott A.M. Chambers, Ph.D.
Kevin M. Bell
Lacy Kolo, Ph.D.
Patton Boggs LLP
8484 Westpark Drive, Ninth Floor
McLean, VA 22102
(703) 744-8000
schambers@pattonboggs.com
kbell@pattonboggs.com
lkolo@pattonboggs.com

*Attorneys for Defendant Natural Alternatives*
*International, Inc.*

/s/ Jason J. Rawnsley
Jason J. Rawnsley (#5379)
rawnsley@rlf.com